UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

WAYNE MARTIN,

                        Plaintiff,

 v.                                                                       9:09-CV-1372
                                                                                  (LEK/ATB)

PATTERSON, *et al.*,

                        Defendants.

---

WAYNE MARTIN, Plaintiff *pro se*
ADRIENNE J. KERWIN, ESQ.
Assistant Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT AND RECOMMENDATION

     This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).[1]

### I.    Facts and Contentions

     Plaintiff alleges that in early February, 2008, he was incarcerated at Ulster Correctional Facility ("Ulster"), awaiting transfer to Kings County Supreme Court when defendant Cuartro issued plaintiff clothing that did not fit because it was too small. (Compl. ¶¶ 1, 3). Plaintiff alleges that he asked to speak to another officer for a change of clothing, and when defendant Cuartro overheard, he pulled plaintiff out of his cell and pushed plaintiff's head into the wall. (Compl. ¶¶ 9–11). Plaintiff alleges

---

[1] The case was originally referred to the Honorable Gustave J. Di Bianco and was assigned to me upon Judge Di Bianco's retirement on January 4, 2010.

that for "five minutes," he suffered a "massive assault of kicks, punches, knees to [the] head, chest, ribs [and] legs[,] causing injuries." (Compl. ¶ 12). After the alleged assault, plaintiff was then transferred to court. (Compl. ¶ 13). Later, a disciplinary hearing was held, and plaintiff was "held accountable." (Compl. ¶ 14).

Plaintiff alleges that the reason defendant Cuartro issued clothing that did not fit and then assaulted plaintiff was because of a grievance complaining of dirty shower and sink water, unacceptable toiletries, and cold temperatures in the mess hall and dormitory. (Compl. ¶ 15). Plaintiff makes the connection between his grievance and the alleged assault based on defendant Cuartro's alleged statement that plaintiff "likes writing grievances" just prior to issuing plaintiff the clothing and assaulting him. (Compl. ¶¶ 4, 14).

The complaint contains eleven causes of action, purportedly based on the above factual allegations. (Compl. at pp. 8–10). In his eleven causes of action, plaintiff makes additional factual allegations and claims (1) assault, (2) failure to protect, (3) failure to properly train staff, (4) failure to properly investigate the "matter," (4) retaliation, (5) assault and battery, (6) retaliation, (7) harassment, (8) conspiracy and violation of procedural due process, (9) excessive force, and (10) malice. (Compl. pp. 8–10). Plaintiff seeks millions of dollars in damages, injunctive relief, and declaratory relief. *Id.* Plaintiff alleges that he wrote to the superintendent of Ulster and the Commissioner of the Department of Correctional Services ("DOCS") regarding his grievance, as well as to the Attorney General of New York State. (Compl. pp. 3–4). Plaintiff also alleges that the Attorney General visited him "while in [the] box."

(Compl. p. 4).

## II. <u>Motion to Dismiss</u>

Defendants move to dismiss the complaint as to defendants Goord, Patterson, and Carlsen, arguing they were not personally involved in the alleged constitutional deprivations. (Dkt. Nos. 9, 14). To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any

documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

### III. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a § 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful

condition or event. *Id. See Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

### A.   Defendant Patterson

Plaintiff alleges no facts that he had any contact with Governor Patterson at all. Certainly Governor Patterson was not personally involved in the assault. The complaint contains no explanation of how the Governor of the State of New York would be personally involved in the management of a correctional facility or in training employees of a correctional facility. Plaintiff's causes of action mention only "defendants" or "corrections employees" and fail to refer to anyone by name. (*See* Compl. pp. 8–10).

Plaintiff's opposition to defendants' first motion to dismiss indicates that plaintiff "believed Goord and Patterson failed to keep some type of periodic training and records of intradepartmental communication . . . concerning violence and recommendations to subordinates on how to train employees to handle situaitions [sic] without use of force or force as [a] last resort." (Pl.'s Resp. p. 4, Dkt. No. 10). This conclusory statement of belief is insufficient to state a claim. Plaintiff's complaint

5

should be dismissed as to defendant Patterson.[2]

### B.   Defendant Goord

As mentioned above, plaintiff's claims relating to defendant Goord are only that he failed to properly train DOCS employees. (Pl.'s Resp. p. 4, Dkt. No. 10). Defendants correctly point out that defendant Goord retired as Commissioner of DOCS in 2006, almost two years before the alleged incident. *See Holland v. Goord*, 2007 WL 2789837, n.3 (W.D.N.Y. 2007). Therefore, defendant Goord could not have been aware of any incident involving plaintiff in 2008.[3] Accordingly, plaintiff's claims as to defendant Goord should be dismissed.

### C.   Defendant Carlsen

Plaintiff alleges that the "Warden" was informed of the alleged events with defendant Cuartro by a letter from plaintiff. (Compl. p. 3–4). Plaintiff alleges that a disciplinary hearing was held about the incident with Cuartro, and plaintiff was "held accountable." (Compl. ¶ 14). The fact that a disciplinary hearing was held indicates some form of investigation occurred, but plaintiff does not allege that defendant

---

[2] The court must also note that although defense counsel appeared on defendant Patterson's behalf and included him in the motion to dismiss, defendant Patterson was never actually served in this case. (Dkt. No. 16). Defendants also correctly point out that at the date of the alleged incident, February 6 or 8, 2008, defendant Patterson was not yet governor of New York State. This fact does not change the court's analysis as to the personal involvement of the Governor, regardless of who was occupying the office at the relevant time.

[3] In addition, plaintiff's conclusory allegations that the Commissioner "failed" to properly train employees due to one alleged incident is insufficient to establish personal involvement as to the Commissioner of DOCS in February 2008, whoever it may have been at the relevant time.

Carlsen was involved directly.[4]  The failure of defendant Carlsen to investigate plaintiff's claims personally, based upon plaintiff's letter of complaint, is insufficient to state a claim.  *See Smart v. Goord*, 441 F. Supp. 2d 631, 642–643 (S.D.N.Y. 2006).

Plaintiff's conclusory allegations that defendants failed to properly train staff and investigate the matter, and that current policy condones excessive force, is not enough to establish that defendant Carlsen (or any defendant) was aware of any history of excessive force toward plaintiff or at Ulster in general.  *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) (plaintiff must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged).

To the extent that plaintiff filed a grievance regarding the alleged assault, he has failed to establish that defendant Carlsen had any knowledge of, or involvement with, the review of plaintiff's grievances sufficient to establish personal involvement in the allegedly unconstitutional conduct underlying the grievances.  Carlsen, as Superintendent, may be involved in the review of prisoner grievances at some level.  However, to establish that a supervisory official became personally involved by learning of the constitutional violation through a "report or appeal," the supervisor must be in a position to "remedy the wrong."  *See Harnett v. Bar*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (stating that the appropriate guiding principle for assessing

---

[4] Plaintiff does not appear to be challenging the disciplinary hearing itself in any way. Plaintiff appears to be stating that although defendant Cuartro was the aggressor, when the disciplinary hearing was held, plaintiff was "held accountable," or found responsible for the incident.

personal responsibility is to determine whether the supervisory official was presented with an "ongoing" violation that he or she could remedy directly).  In this case, plaintiff can not show the personal involvement of defendant Carlsen based upon his failure to "remedy the wrong" and based on a single incident of alleged excessive force.

Plaintiff also claims that defendants failed to properly investigate his grievances.  The failure to investigate, as stated above, does not confer personal responsibility on the supervisory official.  To the extent that plaintiff attempts to assert a separate constitutional claim of "failure to investigate," the law is clear, however, that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.  *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (citing *Nieves v. Gonzalez*, No. 05 Civ. 17, 2006 U.S. Dist. LEXIS 24302, *11–13 (W.D.N.Y. Mar. 2, 2006); *Longi v. County of Suffolk*, No. CV-02-5821, 2008 U.S. Dist. LEXIS 25468, *22–23 (E.D.N.Y. Mar. 27, 2008)).

In order for a constitutional violation to have occurred, the investigation itself must have resulted in a deprivation of a constitutional right.  *Faison v. Hash*, 03-CV-6475P, 2004 U.S. Dist. LEXIS 29151, *6 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York*, 1996 U.S. Dist. LEXIS 16417, *6 (S.D.N.Y. Nov. 7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez*

*v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved)).

Plaintiff had no constitutional right to any investigation, and he certainly had no right to a particular outcome. Plaintiff's claims against defendant Carlsen may be dismissed for lack of personal involvement, and, to the extent that plaintiff attempts to assert a separate claim of failure to investigate his complaints, that claim may be dismissed for failure to state a constitutional claim.

The court is recommending dismissal against defendants Patterson, Goord, and Carlsen in this case. The court is well aware that generally, a district court should not dismiss a pro se complaint on the pleadings without granting leave to amend ***at least once*** when a liberal reading of the complaint gives any indication that a valid complaint may be stated. *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000). In this case, the court doubts that, based on the facts stated in the complaint, plaintiff will be able to amend his complaint to state a claim against either defendant Patterson or Goord, thus the court will recommend dismissal with prejudice as to these defendants. However, given the liberality with which *pro se* plaintiffs must be treated, the court will recommend a dismissal without prejudice as to defendant Carlsen. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

## IV. Plaintiff's State Claims

Because the court is recommending dismissal of plaintiff's federal claims, the court recommends that plaintiff's claims under state law should not be considered under the court's pendent jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997); *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994). Plaintiff's state law claims against defendants Patterson, Goord, and Carlsen should therefore be dismissed.

## V. Service of Process

Because this court is recommending dismissal of the complaint as to defendants Patterson, Goord, and Carlsen, the only remaining defendants would be defendant Cuartro and defendant John Doe, Deputy Commissioner. As indicated above, plaintiff filed his complaint on December 9, 2009, which gave him until April 8, 2010, to serve the defendants. Service on defendant Cuartro was attempted by the Marshal. However, on March 26, 2010, the summons was returned unexecuted as to defendant Cuartro. (Dkt. No. 11). The Marshal's form was returned with a letter from the Inmate Records Coordinator, dated January 29, 2010, stating that there was "no employee at Ulster Correctional Facility with the name . . . C.O. Cuartro." (Dkt. No. 11 at p. 2).

It is true that a *pro se* plaintiff, proceeding *in forma pauperis* may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986). This reliance is balanced by Federal Rule of Civil

Procedure 4(m), which directs that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." A district court is required to grant an "appropriate" extension if the plaintiff shows "good cause" for failure to timely serve, but the court also has the discretion to enlarge the time for service in the absence of a showing of "good cause" by the plaintiff. *Id. See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).

If plaintiff in this case wishes the action to proceed as against defendant Cuartro and any John Doe defendants, plaintiff must make an effort to identify these defendants *and* have them properly served with process. In a letter dated April 13, 2010, the court informed plaintiff that the U.S. Marshal Service was unsuccessful in serving "Officer Cuartro," and that additional information from plaintiff was required to enable the U.S. Marshal to effect service on defendant Cuartro. (Dkt. No. 13). On July 13, 2010, the court wrote to the deputy counsel of DOCS, inquiring as to an address for defendant Cuartro to assist the U.S. Marshal in effecting service. (Dkt. No. 18).

Plaintiff has supplied no additional information as to defendant Cuartro or any information as to the identity of the John Doe defendant. Plaintiff may request the information from defense counsel through discovery, but need not file any "motions" with the court unless plaintiff cannot obtain the information through good faith efforts

11

to seek discovery.  As indicated in the letter sent to the deputy counsel of DOCS, if contact information is supplied, the marshals will attempt once more to effect service.  The court notes, however, that plaintiff should also be attempting to obtain the necessary information to serve defendant Cuartro and also identify the John Doe defendant.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 9) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as to defendants Patterson and Goord, and it is further

**RECOMMENDED**, that defendant Carlsen's motion to dismiss (Dkt. No. 14) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** as to defendant Carlsen.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: July 16, 2010

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge